IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **ELEANORA CHRELASHVILI** | : | **CIVIL ACTION** |
| | : | |
| **v.** | : | |
| | : | |
| **UNITED STATES OF AMERICA, A.B.C.** | : | |
| **COMPANIES (1-100) (fictious entities)** | : | **NO. 24-2241** |

## MEMORANDUM OPINION

**Savage, J.**                                                                                                           **November 7, 2024**

Although the Federal Tort Claims Act ("FTCA") waives sovereign immunity and allows suits against the United States for torts committed by its employees in the course of their employment, there are limitations. One of those limitations is the discretionary function exception – the exception at issue in this case.

Eleonora Chrelashvili was injured when she tripped and fell on a tree stump protruding from an uneven sidewalk in Independence National Historical Park in Philadelphia. The Park is maintained and operated by the National Park Service ("NPS").

Chrelashvili filed this action under the FTCA. The United States has moved to dismiss, invoking the discretionary function exception to the FTCA's waiver of sovereign immunity. With its motion, the United States submits a declaration of the Park Superintendent.

### Background

According to her Complaint, Chrelashvili tripped over a tree stump as she was walking through Independence National Historical Park near the intersection of 5th and Walnut Streets in Philadelphia, Pennsylvania.[1] The tree stump had protruded through the

---

[1] Compl. ¶¶ 7, 23

sidewalk, making the walkway uneven.[2] She claims the sidewalk was negligently maintained and was unsafe for Park visitors.

## Standard of Review

A motion to dismiss brought pursuant to Rule 12(b)(1) is treated similarly to a Rule 12(b)(6) motion. *Gould Elecs. Inc. v. United States*, 220 F.3d 169, 176 (3d Cir. 2000). Whether a Rule 12(b)(1) motion presents a "facial" or a "factual" attack dictates the scope of review. *Lincoln Benefit Life Co. v. AEI Life, LLC*, 800 F.3d 99, 105 (3d Cir. 2015). A facial challenge asserts an insufficiency on the face of the complaint. *Id.* A factual attack disputes the factual basis supporting subject matter jurisdiction. *Id.*

A factual attack is "an argument that there is no subject matter jurisdiction because the facts of the case ... do not support the asserted jurisdiction." *Constitution Party of Pennsylvania v. Aichele*, 757 F.3d 347, 358 (3d Cir. 2014). In a factual challenge to jurisdiction, the defendant disputes the allegations on which jurisdiction depends. Unlike in a facial challenge, we must weigh the evidence and evaluate the merits of the claim. *Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977). No presumptive truthfulness attaches to the plaintiff's allegations. *Id.* The plaintiff bears the burden of showing that jurisdiction exists. *CNA v. United States*, 535 F.3d 132, 145 (3d Cir. 2008) (citation omitted); *Mortensen*, 548 F.2d at 891. Thus, a district court may consider evidence outside the pleadings. *CNA*, 535 F.3d at 145; *Gould Elecs. Inc.*, 220 F.3d at 176 (citation omitted).

The United States' challenge is a factual one.  It argues that its "actions and decisions" alleged in the Complaint "fall expressly and exclusively within the discretion of

---

[2] *Id.* ¶¶ 15-16.

[NPS], where officials must balance competing policy interests within the limits of human and financial resources."[3] Because the United States is immune from suit for actions or inactions that are within the discretion of government agencies, it contends we do not have jurisdiction over Chrelashvili's claim that it negligently maintained the sidewalk.

## Analysis

The FTCA provides a limited waiver of the sovereign immunity of the United States, allowing suits against the government "for money damages ... [for] personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment." 28 U.S.C. § 1346(b)(1). The waiver is not unlimited. Congress did not waive the immunity for a government agency's "performance or the failure to … perform a discretionary function or duty." 28 U.S.C. § 2680(a). The exception protects "legislative and administrative decisions" that are "grounded in social, economic, and political policy" from "judicial second guessing." *S.R.P. ex rel. Abunabba v. United States*, 676 F.3d 329, 333 (3d Cir. 2012) (internal citation omitted). The United States has the burden of proving the exception applies. *Merando v. United States*, 517 F.3d 160, 164 (3d Cir. 2008).

In determining whether to apply the discretionary exception, we make a two-step inquiry. *Merando*, 517 F.3d at 164. First, does a federal regulation or policy specifically prescribe a course of action, leaving the employee no choice but to follow the direction? If so, the exception does not apply. *Merando*, 517 F.3d at 164. On the other hand, if the conduct involves an "element of judgment or choice," we proceed to the next step. *United States v. Gaubert*, 499 U.S. 315, 322 (1991). Second, is the judgment call or choice of

---

[3] United States of America's Mot. to Dismiss 6, ECF No. 6 ["Mot. to Dismiss"].

"the kind that the discretionary function was designed to shield"? *Merando*, 517 F.3d at 165 (quoting *Gaubert*, 499 U.S. at 322-23). In other words, was the government agency required to consider policy factors in pursuing the course of action? *Merando*, 517 F.3d at 165.

Before engaging in the two-step inquiry, we must identify the alleged tortious conduct. Chrelashvili's Complaint blames the NPS for failing to repair or remove the dangerous condition (the tree stump and the uneven sidewalk), warn pedestrians, inspect the area, and cordon it off. Given these allegations, we must determine whether the NPS's actions or inactions resulting in Chrelashvili's injuries involve "an element of judgment or choice." *Merando*, 517 F.3d at 164.

There is no federal regulation or policy prescribing how and when NPS must inspect and remove tree stumps or repair sidewalks. Nor is there a federal directive regarding warning pedestrians of sidewalk dangers. When and how to remove tree stumps, repair sidewalks, and post warnings is left to the discretion of NPS employees. Thus, we proceed to the second step.

At the time of this incident, NPS employees followed the safety policy prescribed in the National Park Service Management Policies of 2006.[4] The relevant section, Visitor Safety and Emergency Response Visitor Safety, provides that Park personnel aim to "provide for injury-free visits," but are constrained in their decision-making by funding and staffing.[5] It states:

> The saving of human life will take precedence over all other management actions as the Park Service strives to protect

---

[4] Management Policies 2006, National Park Service, https://www.nps.gov/subjects/policy/upload/MP_2006.pdf (last visited November 8, 2024).

[5] *Id.* § 8.2.5.1.

4

> human life and provide for injury-free visits. The Service will do this within the constraints of the 1916 Organic Act. The primary—and very substantial—constraint imposed by the Organic Act is that discretionary management activities may be undertaken only to the extent that they will not impair park resources and values…
>
> These management policies do not impose park-specific visitor safety prescriptions. *The means by which public safety concerns are to be addressed is left to the discretion of superintendents and other decision-makers at the park level who must work within the limits of funding and staffing.* Examples include decisions about whether to install warning signs or artificial lighting, distribute weather warnings or advisories, initiate search-and-rescue operations or render emergency aid, eliminate potentially dangerous animals, close roads and trails or install guardrails and fences, and grant or deny backcountry or climbing permits. Some forms of visitor safeguards typically found in other public venues—such as fences, railings, and paved walking surfaces—may not be appropriate or practicable in a national park setting.[6]

*Id.* (emphasis added).

As the policy manual demonstrates, the NPS must balance considerations of visitor safety, human and economic resources, and maintaining the national park setting when making safety or maintenance decisions. It does not dictate how the NPS should balance these concerns or what action to take in response to specific problems. It gives local NPS officials broad discretion in prioritizing responses to conditions based upon a balancing of policy interests.

The United States has submitted the affidavit of Steven Sims, the Superintendent at Independence National Historical Park.[7] Sims describes the resources, funding and staffing limitations Park personnel consider in the remediation of sidewalk hazards and

---

[6] *Id.* (emphasis added).

[7] Decl. of Steven D. Sims ¶ 1 (attached as Ex. 1 to Mot. to Dismiss, ECF No. 6-1).

the posting of warning signs.

The Park, home to the iconic Independence Hall and other symbols of our historic democracy, consists of 55 acres within twenty blocks.[8]  There are 55 buildings of which 41 are on the National Register of Historic Places.[9]  There are 13 miles of stone or brick sidewalks and park trails.[10]  The NPS must preserve and care for about 2.2 million artifacts from colonial and early American history.[11]  Forty-eight staff members maintain the Park's buildings, grounds, and 68 miles of walkways.[12]  Two masons are responsible for maintaining stone and brickwork.[13]  Due to retirements and transfers, the Park is rarely at full staff.[14]  The maintenance department's annual non-labor budget is $710,000.[15]

NPS has no written policy governing sidewalk maintenance.[16]  NPS personnel have the discretion to determine how to use limited financial and human resources to maintain the Park walkways "to provide a safe and healthful environment for visitors and employees." Management Policies of 2006 § 8.2.5.1.

The nature of the government activity here was discretionary. NPS had no mandate regarding how or when to remove tree stumps or repair uneven sidewalks. Those determinations were "susceptible to policy analysis" and subject to the discretionary exception to FTCA liability. *See Merando*, 517 F.3d at 172.

---

[8] *Id.* ¶ 4.

[9] *Id.*

[10] *Id.* ¶ 5.

[11] *Id.* ¶ 4.

[12] *Id.* ¶¶ 5-6.

[13] *Id.* ¶ 8.

[14] *Id.* ¶ 6.

[15] *Id.*

[16] *Id.* ¶ 10.

In sum, the NPS has limited resources, requiring it to prioritize tasks. It has discretion to set those priorities. Because NPS's decision on how and when to remove a tree stump and level the walkway is "grounded in social, economic, and political policy," it falls within the discretionary function exception. *S.R.P.*, 676 F.3d at 329.

## Conclusion

Because the discretionary function exception of the FTCA applies, the United States is immune from Chrelasvili's claims against it.